**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**Robena G. REID**
7905 Timarand Court
Lorton, VA 22079

Plaintiff,

v.

**SEAN DUFFY**
Secretary of Transportation
1200 New Jersey Ave, SE
Washington, DC 20590

Defendant.

**Case: 1:26-cv-01678 JURY DEMAND**
**Assigned To : Upadhyaya, Moxila A.**
**Assign. Date : 5/15/2026**
**Description: Employ. Discrim. (H-DECK)**

RECEIVED
MAILROOM
MAY 15 2026
Angela D. Caesar, Clerk
U.S. District & Bankruptcy Courts
for the District of Columbia

**COMPLAINT**

**COMES NOW** Plaintiff the Roben G. Reid, *pro se*, brings this action under Title VII of the Civil Rights Act of 1964 ("Title VII"), 29 USC § 623 *et seq*. and 42 USC § 2000e *et seq* . to recover from the United States Department of Transportation ("DoT" or the "Agency") through its Federal Transit Administration an agency of the Department of Transportation ("FTA") for its repeated instances and pattern of discrimination against the Plaintiff all damages, penalties, and other remedies available to her. Whereby the Plaintiff hereby avers as follows:

**Jurisdiction and Venue**

1. This is an action to recover damages and penalties on behalf of the Plaintiff arising from the discriminatory conduct of the Defendant in violation of Title VII of the

Civil Rights Act of 1964 ("Title VII"), 29 USC § 623 *et seq.* and 42 USC § 2000e *et seq* This court has jurisdiction pursuant to Title VII because the Plaintiff has exhausted her administrative remedies which were the subject of a final decision by the United States Equal Employment Opportunity Commission ("EEOC"), dated February 19, 2026. 29 USC § 626 and 42 USC § 2000e-5.

2. Venue in this Court is proper pursuant to 42 U.S.C. § 2000e-5(f)(3) in that the Plaintiff worked for the Defendant in this District and the acts of discrimination occurred at that workplace.

## PARTIES

3. Plaintiff is Robena Reid a former employee of the Defendant who was discriminated by her employer in this District.

4. Defendant is the Federal Transit Administration of the United States Department of Transportation that employed the Plaintiff.

## PROCEDURAL HISTORY

5. The Plaintiff filed a formal complaint of discrimination on December 13, 2020, and the Agency timely investigated the claims from February 22, 2021, to April 6, 2021. Efforts to resolve these claims were unsuccessful, and on January 24, 2022, the EEOC received the Plaintiff's request for a Hearing. Discovery commenced on July 28, 2023.

6. On October 10, 2023, the Agency filed a Motion for Summary Judgment. On October 17, 2023, Plaintiff filed her Response to the Agency's Motion for Summary Judgment and a Cross Claim and Counter Claim for Summary Judgment. On October 23,

2023, the Agency filed a Reply to Plaintiff's Response. On October 30, , 2023, Plaintiff filed a Reply to the Agency's Response.

7. On June 13, 2024, Administrative Judge Arnette Dorsey issued a Decision and Order Granting Agency's Motion for Summary Judgment. The Agency did not issue a Final Agency Decision. Plaintiff filed her Notice of Appeal with the Office of Federal Operations on September 16, 2024. The EEOC issued its final decision on the Plaintiff's claims on February 19, 2026.

**Factual Background**

8. Ms. Reid began working for the Agency as an Economist, GS-0110-13, Budget and Policy Office, and later, Safety and Oversight ("TSO"), Federal Transit Administration ("FTA"), from September 15, 1999, until her removal on June 24, 2021.

9. Based on her union activities the Agency tried to remove the Plaintiff in 2015, 2016, and 2017, and these removals were unsuccessful. The Agency voluntarily canceled the 2015 and 2016 actions due to their legal errors. The 2017 removal was reversed by an arbitrator.

10. After arbitrator Michael Wolf ordered the Plaintiff reinstated to her position, the Agency reinstated her to the Office of Safety and Oversight as a Transportation Program Analyst. This "demotion" was the subject of an arbitration enforcement action, which was resolved in the Plaintiff's favor. The arbitrator forced the Agency to restore the Plaintiff to her prior occupational role as an Economist. In order to fulfill the arbitrator's order, the Agency simply "created" an Economist position in the Office of Safety and Oversight.

11. The Agency never restored the Plaintiff to her previous duties performing credit analysis in the Agency's Policy office.

12. Subsequently, Plaintiff and her Union initiated and resolved an enforcement complaint, which restored the Plaintiff to her occupation as an Economist on November 17, 2020. The Agency was required to pay more than $27,000 in legal and arbitration fees for this enforcement action.

13. Scott Giering, Director, Office of Program Oversight, TSO (Transit Safety and Oversight), was the Plaintiff's first-level supervisor from January 2020.

14. Angela Dluger, Deputy Associate Administrator, TSO, was the Plaintiff's second-level supervisor from January 29, 2020, until June 24, 2021, when Ms. Dluger terminated the Plaintiff's employment.

15. Plaintiff at all times during her employment with the Agency had physical impairment, Ankylosing Spondylitis (a type of arthritis) and Hyperprolactinemia (an endocrine disorder) These conditions limited the Plaintiff's sitting, walking and sight.

16. During her employment with the Agency the Plaintiff served as a Union official and was involved in multiple activities as a bargaining official.

17. In this role during her employment with the Agency the Plaintiff served as a witness or advocate for other employees on approximately 18 equal employment cases since 2008.

18. On July 31, 2020, Plaintiff was issued a Memorandum Letter of Caution/Instruction by her supervisor Mr. Giering.

19. The Letter of Caution, which alleged performance deficiencies was an effort to engage in unlawful discrimination in violation of Title VII, and the Telework

Enhancement Act. All eligible Agency employees including the Plaintiff were sent to work from their personal residences on March 16, 2020, because of the ongoing COVID-19 pandemic.

20. The Agency's telework agreement, the applicable Telework law and the Agency's policies clearly state that if an employee's work performance allegedly diminishes, the Agency's available remedy involves returning the employee to an office setting.

21. The Agency failed to do this, despite the Plaintiff's repeated notifications to her chain of command of ongoing information technology ("IT") problems, and the fact that the Plaintiff's duty station is Washington, DC, not Lorton, VA.

22. Additionally, the Agency rated the Plaintiff's performance as "achieved results" on June 29, 2020, even though the Plaintiff was engaged in an enforcement complaint concerning her improper placement in the Transportation Program Analyst position.

23. In issuing this Letter of Caution, the Agency's human resource ("HR") and management officials engaged in a premeditated effort to use false and inaccurate conduct and performance allegations as a rationale to remove the Plaintiff.

24. The July 31, 2020, Letter of Caution, Mr. Giering sent Plaintiff included a memo titled "Letter of Caution/Instruction" which purported to caution Plaintiff regarding her alleged unresponsiveness to his work inquiries and failure to adhere to time and attendance policies.

25. In reality Plaintiff's alleged "unresponsiveness" was caused by the following factors: 1) a need to confer with legal counsel before responding to Mr. Giering; 2) IT

equipment failures including Agency issued laptops; 3) Plaintiff's request for clarification about specific issues, including incidents of embezzlement by grantees.

26. The Letter of Caution was a form of intimidation and harassment by Agency management officials. Agency documents later revealed via the Discovery process during the administrative hearings below showed the Agency's premeditated efforts to use allegations of discipline and misconduct as a rationale to propose the Plaintiff's retirement or removal.

27. The Agency admitted previously that the real reason "we gave her a Letter of Caution was because she [Plaintiff] was filing too many EEO complaints against us."

28. The Agency had engaged in past incidents that involved issuing "Letters of Caution" to the Plaintiff, and the Plaintiff had subsequently filed Unfair Labor Practice Complaints against the Agency. The Federal Labor Relations Authority_ ("FLRA") negotiated settlements for these illegal Agency actions in 2012 through 2021.

29. A partial summary of the list of the Plaintiff's past Union and EEO advocacy is provided below:

2006 :

a. Reid filed an EEO Complaint against the Agency in 2005 (EEOC No. 5 70-2006-00289X; Agency No. DOT2005-19886-FT A- 02) alleging harassment, disability discrimination, and a failure to provide a reasonable accommodation. The Agency settled this complaint, combined with a MSPB complaint in March of 2008 after the case was remanded via a decision of the Court of Appeals for the Federal Circuit (CAFC), case 2007-3056; Reid v. MSPB, 508 F.3d 674. Agency managers had

knowledge of this complaint because this was a precedential decision.

2012:

a. FLRA case WA-CA-12-0723 and 12-0746; ULP; Agency issued a threatening letter to Plaintiff in violation of 5 USC 7116, Threatening a Union Officer; the matter was resolved via a posting notice

b. FLRA case WA-CA-12-0381, ULP; Agency issued a threatening letter to Plaintiff, a Union Officer in violation of 5 USC 7116 Threatening a Union Officer, the matter was resolved via a posting notice

c. FLRA case WA-CA-12-0656, ULP; Agency disregarded a Union arbitration request by Plaintiff, resolved with a Memorandum of Understanding stating that the Agency will not disregard arbitration requests

d. FLRA case WA-RP-12-0057, Petition Request for inclusion of employees into the bargaining unit; resolved by including employees in the bargaining unit.

e. Plaintiff filed other ULPs, but they were withdrawn when the Agency agreed to comply with various laws or Bargaining Agreement specifications.

f. The EEOC consolidated four cases that the Appellant filed against the Agency; The relevant EEOC case numbers are: 570-2014-01 0170X, 570-2015-00528X, 570-2015-00607X, 570-2015-01114X. [Reference Agency cases 2013-25015-FTA-02; 2014-25615-FTA-02; 2014-25616-FTA-02; 2014-25892-FTA-0; 2015-26164-FTA-02] These cases were filed

beginning in 2012; the most recent case was filed in 2015.

2013:

a. EEOC case 570-2013-00335X; gender harassment and unequal pay (Wilkins)
b. Grievance for Bargaining Unit Employee alleging whistleblower reprisal including a letter of reprimand (Muir)

2014:

a. EEOC Case 570-2014-00135X; reprisal, age, and religious discrimination (Virts)
b. EEO complaint; disability reasonable accommodation and workplace change (Caldwell)
c. Class Action lawsuit and ULP; Alleging Job Classification errors and overtime violations, resolved in August of 2019 via a $5.5 million settlement with AFGE Local 3313; Plaintiff was an elected Union official at the time that the complaint was filed and was a case example used in the complaint.

2016:

a. EEO complaint filed by Plaintiff alleging pay discrimination, Agency case number 2016-27001-FTA-02. EEOC Office of Federal Operations found that the Agency committed a violation of the Lilly Ledbetter Fair Pay Act, complaint was resolved in 2021 with payment of back wages to Plaintiff
b. Agency canceled removal of Plaintiff on June 10, 2016; Plaintiff had been removed on June 10, 2015. Agency proposed second removal of Plaintiff

2017:

a. Agency canceled second removal of Plaintiff on February 15, 2017. Agency proposed third removal of Plaintiff.

b. Arbitration hearing testimony for third proposed removal of Plaintiff conducted on December 6-7, 2017

2018

a. Arbitration testimony completed on January 6, 2018

b. FLRA case WA-CA-18-0056, ULP; Agency failed to respond to Requests for Information for arbitration proceedings, complaint was resolved in April, 2021, due to a lack of FLRA members until January of 2021

2019

a. Arbitration decision issued on March 20, 2019, reversing Plaintiff's removal, Agency paid more than $130,000 in attorney fees and a total of more than $430,000 in back wages and benefits for three proposed removals

b. Plaintiff was not restored to her employment or former occupation and was placed on Administrative Leave on May 5, 2019, through January 29, 2020

c. FLRA case WA-CA-19-0394; ULP; Agency failed to reinstate Plaintiff to any Agency job as of September 19, 2019. On November 5, 2019, Agency assigned Plaintiff to the erroneous Transportation Program Analyst position, triggering an arbitration enforcement action.

2020

a. Arbitration enforcement award issued in favor of Plaintiff on November 16, 2020, finding that Agency had improperly assigned Plaintiff to a different occupational series, and this Agency action effectively demoted her; Agency paid more than $27,000 in Plaintiff legal and arbitration fees

2021

a. FLRA case WA-CA-19-0056 ULP; The Agency had failed to respond to an arbitration request contrary to the applicable contract, this complaint was resolved via a Posting Notice and an email distribution was issued by ELR Specialist Brian Whitehead advising employees of Union rights

b. The Agency issued an email advising Plaintiff to retire via Agency attorney Kimberly Eaton that was sent to her on June 10, 2021; when Plaintiff declined to do so, she was removed from her position fourteen days later on June 24, 2021.

2022

c. FOIA case FY22-00228; The Agency affirmed that the Plaintiff's EEO records were uploaded to a third party provider named DropBox under the private account of Agency staff attorney Kimberly Eaton, with no authorization to use this method for sharing documents.

2023

a. FOIA case FY 2023-00251; The Agency affirmed that the Plaintiff's EEO records were uploaded to a third party provider named Kiteworks, by Agency attorney Christopher Hall, with no authorization to use this platform to distribute records.

2024

a. FOIA case FOIA Appeal 24-0006-APPL The USDOT confirmed that during the Plaintiff's employment, the USDOT had not invoked a Continuity of Operations Plan, and that the Washington, DC, headquarters building, which served as the Plaintiff's official duty station remained open and available for use. Pursuant to the terms of the applicable telework agreement and law, the

Agency's available remedy for any alleged or perceived performance issues involved restoring the Plaintiff' to her official duty station; the Agency failed to do so

30. On September 11, 2020, Plaintiff was issued an Official Reprimand alleging that Plaintiff's failure to take a supposed required 8-hour Contracting Officer Representative certification course, as well as Plaintiff's alleged failure to complete several deliverables.

31. The reprimand again was a pretext used by the Agency to punish the Plaintiff for her EEO advocacy and Union activities

32. In reality Ms. Reid's manager, not the Plaintiff, approved the incorrect class offered via the Department of Defense FAITAS platform. The online course material cannot be released without the electronic approval of the relevant management official, in this case, Mr. Giering. It is therefore incorrect to claim that the Plaintiff failed to take a required class. The approved class was the class that the Plaintiff completed.

33. Plaintiff requested to take annual leave from September 21, 2020, to October 2, 2020. In response to this request the Plaintiff was asked to accelerate the due dates of deliverables that fell within the period of the leave request. However, the request to accelerate the due dates of deliverables constituted a form of disability discrimination. The Plaintiff attended a memorial service during the requested leave; had more than 600 hours of available leave, and had specified the purpose of the leave request. Plaintiff had a reasonable accommodation that involved using available leave for medical reasons; accelerating due dates for assignments effectively renders this accommodation as

ineffective. This reasonable accommodation dated back to 2005, and the Agency had resolved a case filed by the Plaintiff in 2008 for a reasonable accommodation (EEOC case 570-2006-00289X)

34. At the direction of the Agency HR personnel Plaintiff changed the leave request to a request under the Family Medical Leave Act ("FMLA") because the manager was objecting to the Plaintiff's leave request. Ultimately, the FMLA request was not necessary for the short duration of the leave request and the use of accrued leave.

35. On multiple occasions since May 2020, Ms. Reid's chain of command did not acknowledge the Plaintiff's reasonable accommodation, which was established in 2005, failed to provide Plaintiff with computer and support services, and threatened Plaintiff with suspension, leave restrictions, and disciplinary action including removal

36. On September 18, 2020, Plaintiff advised Mr. Whitehead that she would be picking up her repaired laptop at the USDOT headquarters building.

37. On November 4, 2020, Mr. Giering informed Plaintiff her performance was unacceptable in multiple areas, predominantly related to Plaintiff's resistance to his instructions on assignments, argumentativeness, lateness, and general poor work quality, and placed her on a Performance Improvement Plan ("PIP").

38. As with the Letter of Concern the PIP was issued to Plaintiff as a rationale for proposing another Removal.

39. The Plaintiff was issued the PIP one day after a mediation for her EEO complaint failed to resolve this EEO complaint and a retaliatory nexus was established. The Agency asked the Plaintiff to retire, and she declined this settlement offer.

40. In reality, at the direction of her chain of command the Plaintiff was operating in an improper job classification as a Transportation Program Analyst, which was being challenged via an arbitration enforcement action. The arbitrator ruled in favor of the Plaintiff and ordered the Plaintiff to be restored to her occupational profession as an Economist on November 16, 2020, and ordered the Agency to pay $27,000 in attorney fees.

41. The Plaintiff was teleworking at her residence at the behest of the Agency due to the Covid 19 pandemic. If the Agency perceived performance problems, the available remedy according to the Telework Enhancement Act law was to return the Plaintiff to an office environment, which the Agency failed to do.

42. Based on the Arbitrator's ruling On November 16, 2020, Mr. Giering rescinded the PIP.

43. Plaintiff was scheduled on January 6, 2021, to make an oral response to a proposed suspension. On January 5, 2021, she emailed the deciding official for the suspension and stated, "[Plaintiff's representative] is unavailable for this meeting, and now I have a medical emergency, so I am not available either," along with a request to take sick leave for the remainder of January 5 and 6, 2021.

44. The Plaintiff was the oldest member of her office group. The Agency had tried to coerce the Plaintiff to retire multiple times from 2016-2021.

45. The Agency was aware of this age discrimination claim, since it was articulated in the 2016 EEO complaint that involved a violation of the Lilly Ledbetter Fair Pay Act.

**Count I**
**(Violations of ADEA 29 USC § 623 *et seq.*)**

46. Plaintiff incorporates by reference paragraphs 1 through 45 above.

47. Based on her age the Plaintiff was subjected to repeated adverse employment actions including termination of her employment and refusal to accommodate her identified medical disabilities.

48. Additionally, because of her insistence in upholding her rights under the federal employment laws and the rights of her co-workers the Plaintiff was subjected to harassment and discipline by her superiors.

49. Because of these adverse employment actions, the Plaintiff has suffered the loss of income and other damages in the amount of $2,649,816.

50. Because of the intentional and egregious actions of the Agency, the Plaintiff is entitled to punitive damages in the amount of $300,000.

**Count II**
**(Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*.)**

51. Plaintiff incorporates by reference paragraphs 1 through 50 above.

52. Based on the Plaintiff's activities as a Union official and on behalf of her co workers supporting their legitimate equal employment rights the Plaintiff was subjected to repeated adverse employment actions including termination of her employment and refusal to accommodate her identified medical disabilities.

53. Because of these adverse employment actions, the Plaintiff has suffered the loss of income and other damages in the amount of 2,649,816.

54. Because of the intentional and egregious actions of the Agency, the Plaintiff is entitled to punitive damages in the amount of $300,000.

**WHEREFORE** Plaintiff respectfully request judgment in the amounts requested.

Respectfully submitted,

Date: May 14, 2026

By: /s/Robena G. Reid

Robena G. Reid, *Pro Se*
7905 Timarand Court
Lorton, VA 22079